# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PETER ALEXENKO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 16 C 11283 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| MICHAEL HOFFMAN, and the CITY OF NAPERVILLE, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Defendant Michael Hoffman, a Naperville police social worker, intervened in a dispute involving Plaintiff Peter Alexenko and the mother of Alexenko's child, allegedly facilitating the removal of the minor child from Alexenko's residence, instructing other Naperville police officers not to honor an order of protection Alexenko obtained, and attempting to affect the disposition of Alexenko's child custody case, among other things. Thereafter, Alexenko filed this suit against Hoffman and the City of Naperville (the "City"), asserting claims against Hoffman and the City for violations of his civil rights pursuant to 42 U.S.C. § 1983 and a state law claim for intentional infliction of emotional distress ("IIED"). Hoffman and the City have filed a motion to dismiss the first amended complaint. Because the Court finds that Alexenko has not sufficiently pleaded any of his claims, the Court grants Hoffman and the City's motion and dismisses the first amended complaint without prejudice.

# BACKGROUND[1]

Alexenko and Genevieve Hines lived together in Naperville, Illinois with their minor child, A.A. On October 10, 2015, Alexenko and Hines got into a dispute in A.A.'s presence, causing Alexenko to call the Naperville police. Hoffman, a police social worker, was among the Naperville police officers who responded to Alexenko's call. Over Alexenko's objection, Hines took A.A. from their residence. After having no further contact with A.A. or Hines, on October 19, Alexenko went to the Naperville police station to report that Hines took A.A. from their house on October 10 and that he had not heard from either since. The front desk officer told Alexenko that Hines was in contact with Hoffman, who reported that Hines and A.A. were "O.K." and that Alexenko needed to speak with Hoffman. Doc. 19 ¶ 8. Alexenko did not succeed in speaking with Hoffman.

On October 20, Alexenko obtained an emergency order of protection against Hines from the DuPage County Circuit Court, which provided that Hines was to stay away from him and return A.A. to his custody. Alexenko then returned to the Naperville police station and requested that the order of protection be given to Hoffman and that he be put in contact with Hoffman so he could determine A.A.'s location. The officers refused to accept the order of protection or provide Alexenko with Hoffman's contact information.

On October 26, Alexenko filed a child custody case in DuPage County Circuit Court. A guardian ad litem was appointed for A.A. on November 9. On November 15, the court entered an order returning A.A. to Alexenko's custody. But Hines, aided by Hoffman, refused to honor the court's order and did not return A.A. to Alexenko. Hoffman also began attending court dates

---

[1] The facts in the background section are taken from Alexenko's first amended complaint and exhibits attached thereto and are presumed true for the purpose of resolving Defendants' motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007).

in the child custody case, providing information to the court and attempting to affect the disposition of that case. The court ordered that Hines be allowed to return to the residence she had shared with Alexenko to retrieve her property. On December 14, Hines, accompanied by Hoffman, went to the residence, where Hoffman helped and allowed Hines to take property that belonged to Alexenko.

At some point, as a result of complaints to the Naperville police department by the guardian ad litem appointed in the child custody case, the City terminated Hoffman's employment.

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

I.  **Section 1983 Claim against Hoffman (Count I)**

Problematically, in his first amended complaint, Alexenko pleads a generic § 1983 claim against Hoffman without specifying the basis for his claim. Although Alexenko need not plead legal theories in his complaint, *see Hatmaker v. Mem'l Med. Ctr.*, 619 F.3d 741, 743, he must still plead sufficient facts to put Hoffman on notice of the claim, *Hooper v. Proctor Health Care Inc.*, 804 F.3d 846, 851 (7th Cir. 2015). In his response to the motion to dismiss, Alexenko argues that his allegations suffice to state substantive due process and class of one equal protection claims. The Court will only analyze these claims, as it is unable to determine any other alleged basis for Alexenko's § 1983 claim against Hoffman in his individual capacity.[2]

   A.  **Substantive Due Process Violation**

In his response, Alexenko contends that Hoffman interfered with Alexenko's fundamental right of child-rearing in refusing to allow him to contact A.A. and continuing to block his attempts to do so after he presented the Naperville police department with the order of protection. "[T]he scope of substantive due process is very limited," involving "the exercise of governmental power without reasonable justification." *Tun v. Whitticker*, 398 F.3d 899, 902 (7th Cir. 2005). Alexenko does invoke a recognized fundamental right, the right of child-rearing and to familial relations. *See Brokaw v. Mercer County*, 235 F.3d 1000, 1018 (7th Cir. 2000) (collecting cases). Although that right is not absolute, "courts have recognized that a state has no interest in protecting children from their parents unless it has some definite and articulable evidence giving rise to a reasonable suspicion that a child has been abused or is in imminent danger of abuse." *Id.* at 1019; *see also Doe v. Heck*, 327 F.3d 492, 524 (7th Cir. 2003) (threats

---

[2] Defendants initially argue that the fact that Alexenko has pleaded his complaint "hypothetically and in the alternative," Doc. 19 at 1, warrants dismissal of the complaint. The Court does not find this alone warrants dismissal and proceeds to consider the merits of Defendants' motion to dismiss.

to remove children from parents' custody without any evidence of child abuse violate parents' rights to familial relations). Here, Alexenko does not raise the typical interference with familiar relations claim, instead arguing that Hoffman allegedly interfered with his attempts to contact A.A. and enforce the order of protection he had obtained. But, to the extent the Court can make out from Alexenko's pleadings, the Due Process Clause does not provide him with any protections, substantive or procedural, for Hoffman's actions. *See Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 768, 125 S. Ct. 2796, 162 L. Ed. 2d 658 (2005) (concluding that individual "did not, for purposes of the Due Process Clause, have a property interest in police enforcement of the restraining order against her husband," in both its procedural and substantive manifestations); *Marks v. Indiana*, No. 1:15-CV-118, 2015 WL 4421338, at *3 (N.D. Ind. July 17, 2015) ("[A]n attempted constitutional violation . . . is not actionable under Section 1983."). Therefore, the Court finds that Alexenko has not sufficiently alleged a substantive due process claim and dismisses the claim without prejudice.

B.   **Equal Protection Claim**

Alexenko also argues that he has sufficiently alleged an equal protection class of one claim. To state a class of one equal protection claim, Alexenko must plead facts suggesting that a state actor discriminated against him with no rational basis. *Miller v. City of Monona*, 784 F.3d 1113, 1120 (7th Cir. 2015). Although a common method of making such a showing is to identify a comparator who was treated differently, Alexenko need not "identify specific examples of similarly situated persons in [his] complaint[ ]." *Id.* (quoting *Capra v. Cook County Bd. of Review*, 733 F.3d 705, 717 (7th Cir. 2013)). But Alexenko must at least include allegations to establish that Hoffman "lacked a rational basis for singling [him] out for intentionally discriminatory treatment." *Id.* at 1121 ("It is not enough for a complaint to suggest an improper

5

motive, for [a] given action can have a rational basis and be a perfectly logical action for a government entity to take even if there are facts casting it as one taken out of animosity." (alteration in original) (citation omitted) (internal quotation marks omitted)).

Alexenko argues in his response that Hoffman targeted him, potentially because, as he mentions in that response, Hoffman and Hines had begun a romantic relationship after Hoffman responded to Alexenko's initial call to the police on October 10, 2015. Even considering this additional allegation, the Court does not find that the first amended complaint itself contains sufficient allegations to suggest that Hoffman singled out Alexenko for intentionally discriminatory treatment. Because the first amended complaint does not put Hoffman on sufficient notice of the basis of an equal protection class of one claim, the Court dismisses that claim without prejudice.[3]

## II. *Monell* Claim against the City (Count II)

The City also seeks dismissal of Alexenko's § 1983 claim against it, arguing that Alexenko has not adequately alleged a *Monell* policy or practice claim. The City cannot be held liable on a theory of *respondeat superior*. *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015). Instead, liability may be based on (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) a constitutional injury caused by a person with final policymaking authority. *Id.* The policy or practice "must be the direct cause or moving force behind the constitutional violation." *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (citation omitted) (internal quotation marks omitted). Here, Alexenko claims he has sufficiently

---

[3] Hoffman also contends he is entitled to absolute immunity because he is a social worker. Because the Court dismisses Alexenko's § 1983 claims on other grounds, the Court does not address this argument at this time.

6

alleged that the City maintained a policy or practice of allowing police officers to act unsupervised, failing to address citizen complaints concerning police officers, and ignoring court orders.

To adequately allege a *Monell* policy or practice claim, Alexenko must "plead[ ] factual content that allows the Court to draw the reasonable inference that the [City] maintained a policy, custom, or practice" that contributed to the alleged violation. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citation omitted) (internal quotation marks omitted). Here, Alexenko has not done so, pleading the existence of such a policy only in conclusory fashion. In relying only on his interactions with the Naperville police department concerning his child custody dispute with Hines, he fails to "demonstrate that there is a policy at issue rather than a random event." *Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010). Indeed, a plaintiff pursuing a widespread policy or practice claim generally must allege more than one or even three instances of misconduct. *Id.* (declining to adopt a "bright-line rule[ ]" but indicating that there must be "more than one instance, or even three" of wrongdoing (citation omitted) (internal quotation marks omitted)). Although it is "not impossible for a plaintiff to demonstrate the existence of an official policy or custom by presenting evidence limited to his experience," doing so is "necessarily more difficult" because "what is needed is evidence that there is a true municipal policy at issue, not a random event." *Grieveson v. Anderson*, 538 F.3d 763, 774 (7th Cir. 2008) (citations omitted) (internal quotation marks omitted); *Davis v. Metro. Pier & Exposition Auth.*, No. 11 C 9018, 2012 WL 2576356, at *12 (N.D. Ill. July 3, 2012) (finding plaintiff had not adequately alleged a widespread custom or policy where "[a]ll of the allegations in the Complaint pertain exclusively to [the plaintiff]"); *Lewis v. County of Cook*, No. 10 C 1313, 2011 WL 839753, at *14 (N.D. Ill. Feb. 24, 2011)

(dismissing *Monell* claim where the plaintiff "does not allege facts supporting retaliatory conduct against anyone other than herself"). Because all that Alexenko alleges in connection with the City's alleged policy arises from the limited interactions between Alexenko and Hoffman involving a series of related events, the Court cannot infer that the City maintains a widespread custom or policy of failing to supervise officers or ignoring court orders, particularly in light of the fact that Alexenko alleges that the City terminated Hoffman for his actions in connection with this case. *See Liska v. Dart*, 60 F. Supp. 3d 889, 905 (N.D. Ill. 2014) ("[Plaintiff's] conclusory allegation of the existence of a widespread custom is insufficient to support a *Monell* claim."); *White v. City of Chicago*, No. 11 C 7802, 2014 WL 958714, at *3 (N.D. Ill. Mar. 12, 2014) (dismissing *Monell* claim where "Plaintiff merely alleged that the City engaged in a 'widespread practice' without providing any factual basis for that allegation"). Thus, the Court dismisses Alexenko's § 1983 claim against the City without prejudice.

### III. IIED Claim (Count III)

Finally, Defendants seek dismissal of Alexenko's IIED claim, first arguing that the majority of the events underlying the claim are time-barred, and, alternatively, that Alexenko has not sufficiently alleged facts to allege the necessary outrageous conduct.

The statute of limitations is an affirmative defense that need not be anticipated in the complaint in order to survive a motion to dismiss. *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). But that is not the case where "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint reveals that an action is untimely under the governing statute of limitations." *Id.*; *see also Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (considering statute of limitations defense on motion to dismiss where relevant dates were set forth in the complaint). Alexenko's IIED claim is governed by a

8

one-year statute of limitations.  745 Ill. Comp. Stat. 10/8-101; *Evans v. City of Chicago*, 434 F.3d 916, 934 (7th Cir. 2006), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013).  Alexenko alleges that Hoffman's and the City's actions were extreme and outrageous, with the latest alleged wrongful act occurring on December 14, 2015, when Hoffman accompanied Hines to the residence she previously shared with Alexenko to retrieve her property and took some property allegedly belonging to Alexenko.  Alexenko filed this case on December 12, 2016.  Defendants argue that the Court should look at each individual alleged bad action separately, meaning that only the December 14, 2015 action is timely, as most other actions occurred in October 2015.  But here, Alexenko's IIED claim involves a continuing violation, *i.e.*, a series of allegedly unlawful acts taken by Hoffman and the City and not "a single overt act from which subsequent damages may flow."  *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 85–86, 207 Ill. 2d 263, 278 Ill. Dec. 228 (2003).  Thus, the limitations period began to run only on the date of the last alleged injury, here December 14, 2015, and the Court may consider the entirety of the alleged conduct as part of Alexenko's IIED claim.

To recover for IIED, Alexenko must allege that "(1) defendants' conduct was extreme and outrageous; (2) defendants either intended to inflict severe emotional distress or knew that there was a high probability that their conduct would do so; and (3) defendants' conduct actually caused severe emotional distress."  *Lifton v. Bd. of Educ. of City of Chicago*, 416 F.3d 571, 579 (7th Cir. 2005) (quoting *Thomas v. Fuerst*, 803 N.E.2d 619, 625, 345 Ill. App. 3d 929, 281 Ill. Dec. 215 (2004)).  To be considered extreme and outrageous, the conduct "must be so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community."  *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 438 (7th Cir. 2009) (quoting *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211, 154 Ill. 2d 1, 180 Ill. Dec. 307 (1992)).  Alexenko

9

makes no specific arguments as to why the conduct alleged in his first amended complaint qualifies as extreme and outrageous, instead conclusorily stating that "[w]hen viewed as a whole, the defendants' actions easily satisfy the elements" of IIED. Doc. 26 at 14. This does not suffice to defeat Defendants' arguments that he has failed to plead sufficiently outrageous conduct, let alone the other remaining elements of the claim. *See United States v. Hook*, 471 F.3d 766, 775 (7th Cir. 2006) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived[.]" (quoting *United States v. Lanzotti*, 205 F.3d 951, 957 (7th Cir. 2000))). Thus, left without a basis to find that Alexenko has sufficiently alleged the elements of his IIED claim, the Court dismisses this claim without prejudice.[4]

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion to dismiss [23]. The Court dismisses the first amended complaint without prejudice.

Dated: October 13, 2017

SARA L. ELLIS
United States District Judge

---

[4] Because the Court dismisses all the claims raised in Alexenko's first amended complaint, it need not address Defendants' remaining arguments. But in light of the fact that the dismissal is without prejudice, the Court notes that, in any amended pleading, Alexenko should make clear that he seeks punitive damages only against Hoffman in his individual capacity because he cannot recover punitive damages against the City. *See* 745 Ill. Comp. Stat. 10/2-102. Similarly, because the City may but need not indemnify Hoffman with respect to attorneys' fees, Alexenko should not include a request for indemnification against the City for attorneys' fees. *See Winston v. O'Brien*, 773 F.3d 809, 813 ("§ 9-102 does not mandate indemnification of attorney's fees."); *Tracy v. Hull*, No. 15 C 5052, 2015 WL 5693752, at *3 (N.D. Ill. Sept. 28, 2015) (dismissing indemnification claim against city for attorneys' fees).