UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PETER ALEXENKO, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) No. 16 C 11283 |
|     v. | ) |
| | ) Judge Sara L. Ellis |
| MICHAEL HOFFMAN, individually and in | ) |
| his capacity as a police officer for the City of | ) |
| Naperville, Illinois, and the CITY OF | ) |
| NAPERVILLE, an Illinois municipality, | ) |
| | ) |
|     Defendants. | ) |

## **OPINION AND ORDER**

Defendant Michael Hoffman, a Naperville police social worker, intervened in a dispute involving Plaintiff Peter Alexenko and the mother of Alexenko's child, allegedly facilitating the removal of the minor child from Alexenko's residence and instructing other Naperville police officers to disregard an order of protection Alexenko obtained, among other things. Thereafter, Alexenko filed this suit against Hoffman and the City of Naperville (the "City"). The Court previously dismissed Alexenko's first amended complaint without prejudice. In his second amended complaint, Alexenko brings federal claims against Hoffman and the City for violations of substantive due process, the right to familial relations, and equal protection, and a state law claim for intentional infliction of emotional distress ("IIED"). He also seeks indemnification from the City. Hoffman and the City have filed a motion to dismiss the second amended complaint. The Court again dismisses Alexenko's claims based on the right to familial relations because he has not sufficiently alleged a violation of that right, this time with prejudice. But the Court allows Alexenko to proceed on his substantive due process claim for deprivation of personal property against Hoffman, though not against the City, where Alexenko sufficiently

pleads Hoffman's personal involvement in that deprivation. The Court also allows the equal protection claim to proceed, finding the City waived its arguments for dismissal by raising them in an undeveloped footnote. Similarly, Alexenko's failure to respond to Hoffman and the City's arguments for dismissal of the IIED claim leads to the dismissal of that claim with prejudice.

## BACKGROUND[1]

Alexenko and Genevieve Hines lived together in Naperville, Illinois with their minor child, A.A. On October 10, 2015, Alexenko and Hines got into a dispute in A.A.'s presence, causing Alexenko to call the Naperville police. Hoffman, a police social worker and sworn police officer, was among the Naperville police officers who responded to Alexenko's call. Alexenko related to the police that he feared Hines might harm herself or A.A. But, over Alexenko's objection, the Naperville police facilitated Hines' removal of A.A. from the residence. Hoffman used Naperville funds to place Hines and A.A. in a hotel or similar accommodations in a program typically serving victims of domestic violence. Hines, however, did not qualify for the program because no evidence of domestic violence or abuse existed at that time. Shortly thereafter, Hoffman, who is more than twice Hines' age, began a sexual relationship with Hines.

Between October 10 and October 19, Alexenko had only limited contact with Hines by cell phone, and Hines did not allow Alexenko to have contact with A.A. Hines also did not disclose her or A.A.'s location. Alexenko asked Hines to return A.A. to their residence and allow Alexenko to contact A.A., but Hines stated that she did not have to do so and that Hoffman had told her this was the case. Hines threatened to take A.A. from Illinois and that Alexenko

---

[1] The facts in the background section are taken from Alexenko's second amended complaint as well as the exhibit attached thereto and are presumed true for the purpose of resolving Defendants' motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007).

may never see A.A. again. When Alexenko indicated that taking A.A. would be illegal, Hines responded that Naperville police, including Hoffman, Sergeant Brad Marsh, and Detective John Reed had told her she could do what she wanted.

Having heard this, Alexenko went to the Naperville police station on October 19 to report that Hines took A.A. from their house on October 10, that he had not been able to contact A.A. since, and that Hines had threatened to take A.A. from Illinois and keep Alexenko from seeing his child again. The front desk officer told Alexenko that Hines was in contact with Hoffman, that Hines and A.A. were "O.K.," and that he could not provide any additional information to Alexenko. Doc. 37 ¶ 36. Alexenko asked to make a formal police report, but the desk officer did not allow him to do so and told Alexenko that only Hoffman could speak with him regarding the matter. Alexenko left Hoffman several messages, but Hoffman did not call him back.

On October 20, Alexenko obtained an emergency order of protection against Hines from the DuPage County Circuit Court, which provided that Hines was to stay away from him and return A.A. to his custody. Alexenko then returned to the Naperville police station and requested that the order of protection be given to Hoffman and that he be put in contact with Hoffman to determine A.A.'s location. The desk officers refused to accept the order of protection or call Hoffman to the desk. After he could not reach Hoffman by phone, Alexenko called and spoke with Naperville's police chief, Robert Marshall, who arranged a meeting between Alexenko and Hoffman for October 21 at the Naperville police department. At that meeting, Alexenko gave Hoffman and his supervisor, Sergeant Brad Marsh, the order of protection. Hoffman and Marsh questioned the order of protection's authenticity and legitimacy. Marsh also threatened that, if Alexenko did not back down from his attempts to have the order enforced and be reunited with A.A., Alexenko may be arrested. Specifically, Marsh implied that, in contrast to Alexenko's

prior reports of having had his car vandalized, the police would accuse Alexenko of having vandalized his own car and of making a false report. In the end, Hoffman and Marsh did not accept the emergency order of protection, leaving Alexenko feeling intimidated and emotionally traumatized by the meeting.

After the meeting, Alexenko again spoke with Marshall, relaying what had occurred during the meeting. Marshall put Alexenko in touch with Naperville deputy chief Brian Cunningham, telling Alexenko that Cunningham would straighten out the situation. Alexenko spoke with Cunningham on October 22 and provided Cunningham with a copy of the emergency order of protection on October 23. That afternoon, Marsh called Alexenko and told him that Hines had learned of the emergency order of protection and would bring A.A. to the Naperville police station. Marsh told Alexenko to come to the police station to collect A.A. Alexenko got to the police station around 4:15 p.m. and found Hoffman, who told Alexenko that A.A. would be there any minute. After an hour passed, Alexenko asked the desk officer to inquire about A.A.'s whereabouts. The desk officer told him that "they" would be down any minute, *id.* ¶ 52, but shortly thereafter, only Hoffman appeared, who attempted to negotiate terms on Hines' behalf that differed from the emergency order of protection. Alexenko declined and Hoffman returned to a private area of the police station. Around 6:30 p.m., Alexenko again asked the desk officer for a status, at which point Hoffman and Marsh appeared and told Alexenko he could not collect A.A. that day. Although Hoffman represented that Hines and A.A. were not at the police station that day, they in fact had been there with Hoffman that evening, with Hines encouraged by Hoffman to ignore the emergency order of protection. Alexenko then spoke to Marshall and Cunningham, and Cunningham told him that Marsh was going to try to get into court as soon as possible.

Having failed to hear anything further from the Naperville police despite additional inquiries, on October 26, Alexenko filed a child custody case in DuPage County Circuit Court. A guardian ad litem was appointed for A.A. on November 9. The guardian ad litem began an investigation. On November 15, the court entered an order returning A.A. to Alexenko's custody. Alexenko eventually had contact with A.A. on November 26.

In connection with the child custody case, the court ordered that Hines be allowed to return to the residence she had shared with Alexenko to retrieve her property. On December 14, Hines, accompanied by Hoffman, went to the residence, where Hoffman facilitated and allowed Hines to take property that belonged to Alexenko.

At some point, the guardian ad litem began complaining to the Naperville police department about Hoffman's inappropriate behavior. As a result, the City terminated Hoffman's employment in 2016. But Alexenko continued to experience harassing behavior. For example, the Naperville police department has stationed police cars outside his residence and officers have followed him as he drives in Naperville. Shortly after he filed his first amended complaint in this case, the City towed Alexenko's car. Although Alexenko admits that the car was parked in a tow zone overnight, among the many cars similarly parked, the City towed only his car. Only after Alexenko mentioned the towing in his response to the motion to dismiss the first amended complaint in this case did the City ticket other cars. Additionally, around August 9, 2017, Detective John Reed called Alexenko's counsel and requested an interview with Alexenko concerning his 2015 report that his car had been vandalized, explaining he needed to speak with Alexenko before closing the file. Reed also told counsel he believed Alexenko had mental issues. Although Reed claimed he had cleared his call through the City's legal department, defense counsel in this case told Alexenko's counsel they had no knowledge of Reed's call. A

5

day after the call, Alexenko's neighbors reported that Naperville police officers were at Alexenko's door when he was not at home.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

I. **Federal Claims against Hoffman (Counts I and III)**

Unlike in his first amended complaint, where Alexenko pleaded only a generic 42 U.S.C. § 1983 claim, in the second amended complaint, Alexenko delineates his federal claims against Hoffman, alleging a claim for deprivation of his right to familial relations in violation of § 1983 and a separate claim for a substantive due process violation with respect to the seizure of his personal property. As Hoffman and the City point out, Alexenko's claim for deprivation of the right to familiar relations is a substantive due process claim. *See Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 478 (7th Cir. 2011) ("The fundamental right to familial relations is an aspect of substantive due process."). But because Alexenko focuses on different rights in his

claims—in Count I, the right to familial relations, and in Count III, the right to property—the Court does not find these claims duplicative and analyzes whether Alexenko has stated a substantive due process claim with respect to each right separately.

### A. Substantive Due Process Violation—Right to Familial Relations (Count I)

Alexenko contends that Hoffman interfered with Alexenko's fundamental right to familial relations in facilitating A.A.'s removal from the residence and preventing him from regaining custody of A.A. even in the face of the emergency order of protection. As the Court stated in discussing the first amended complaint, "the scope of substantive due process is very limited," involving "the exercise of governmental power without reasonable justification." *Tun v. Whitticker*, 398 F.3d 899, 902 (7th Cir. 2005). Alexenko does invoke a recognized fundamental right, the right of child-rearing and to familial relations. *See Brokaw v. Mercer County*, 235 F.3d 1000, 1018 (7th Cir. 2000) (collecting cases). Although that right is not absolute, "courts have recognized that a state has no interest in protecting children from their parents unless it has some definite and articulable evidence giving rise to a reasonable suspicion that a child has been abused or is in imminent danger of abuse." *Id.* at 1019; *see also Doe v. Heck*, 327 F.3d 492, 524 (7th Cir. 2003) (threats to remove children from parents' custody without any evidence of child abuse violate parents' rights to familial relations).

In dismissing Alexenko's familial relations claim in his first amended complaint, the Court found that the Due Process Clause did not provide him with any protections, substantive or procedural, for Hoffman's actions. *See Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 768, 125 S. Ct. 2796, 162 L. Ed. 2d 658 (2005) (concluding that individual "did not, for purposes of the Due Process Clause, have a property interest in police enforcement of the restraining order against her husband," in both its procedural and substantive manifestations). Alexenko's

7

amended pleading does not fix any of the deficiencies the Court previously identified. Alexenko continues to essentially maintain a claim that Hoffman interfered with his attempts to enforce the order of protection, which required Hines to return A.A. to Alexenko's custody. But pursuant to *Castle Rock*, the due process clause does not provide Alexenko with any protections in having that order enforced. *Castle Rock*, 545 U.S. at 768. And in his response to the motion to dismiss, Alexenko provides no legal argument as to why *Castle Rock* does not apply to his claim or why his amended claim overcomes the deficiencies the Court identified in its prior Opinion and Order. Alexenko does argue that he has sufficiently pleaded that Hoffman removed A.A. from the residence in the first place, but he does not allege any facts to suggest that, at the time of the initial domestic disturbance on October 10, 2015, anything prevented Hines from leaving the residence with A.A. or from having the police facilitate that occurrence. And Alexenko only obtained an order giving him temporary custody of A.A. on October 20, 2015, after Hines had already left the residence. Therefore, the Court again finds that Alexenko has failed to sufficiently allege a substantive due process claim with respect to the right to familial relations and this time dismisses the claim with prejudice.

      **B.**     **Substantive Due Process Violation—Right to Property (Count III)**

Alexenko also argues that Hoffman violated his substantive due process rights when, on December 14, 2015, he accompanied Hines on a court-ordered visit to the residence and "facilitated and allowed Hines to take property belonging to Alexenko." Doc. 37 ¶ 64. Hoffman argues that Alexenko does not plead sufficiently particularized facts to suggest that Hoffman took any property that belonged to Alexenko so as to establish the personal involvement required for a § 1983 claim. *See Pepper v. Vill. of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005) ("[T]o be liable under § 1983, the individual defendant must have caused or participated in a constitutional

deprivation." (citation omitted) (internal quotation marks omitted)). But Hoffman is asking too much of Alexenko at the pleading stage, where the Court does not apply a heightened pleading standard to § 1983 claims. *See Harper v. Wexford Health Sources, Inc.*, No. 14-CV-04879, 2017 WL 2672299, at *2 (N.D. Ill. June 21, 2017). Although somewhat conclusory, Alexenko has plausibly alleged that Hoffman, acting under the color of law, was involved in the taking of Alexenko's property from his residence. *See Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (personal liability exists where conduct occurred at defendant's direction or with his knowledge and consent).

Alternatively, Hoffman argues that qualified immunity protects him from Alexenko's substantive due process claim. But his argument with respect to qualified immunity focuses solely on whether the law "is clearly established that a social worker violates a father's due process rights by failing to stop a mother from taking a child from the father's house following a domestic dispute and failing to force the mother to return the child." Doc. 44 at 8. This inquiry, however, is relevant only to Alexenko's familial relations claim, not the claim concerning the taking of Alexenko's personal property. Hoffman makes no argument as to why he is entitled to qualified immunity on this claim, and the Court refuses to construct his arguments for him, particularly because Hoffman is represented by counsel. *See Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011) (the court is not "obliged to research and construct legal arguments for parties, especially when they are represented by counsel"). Therefore, the Court allows Alexenko's substantive due process claim concerning the taking of his personal property against Hoffman to proceed to discovery.

## II. Federal Claims against the City (Counts II, IV, and VII)

The City also seeks dismissal of Alexenko's claims against it, arguing that Alexenko has not adequately alleged *Monell* policy or practice claims with respect to his claims for violations of his rights to familial relations or personal property and his class of one equal protection claim.

### A. Substantive Due Process Claims (Counts II and IV)

First, the Court addresses Alexenko's substantive due process claims against the City. The City cannot be held liable on a theory of *respondeat superior*. *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015). Instead, liability may be based on (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) a constitutional injury caused by a person with final policymaking authority. *Id.* The policy or practice "must be the direct cause or moving force behind the constitutional violation." *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (citation omitted) (internal quotation marks omitted).

Here, for his claim against the City with respect to the right to familial relations, Alexenko claims he has sufficiently alleged that the City maintained a policy or practice of allowing police officers to act unsupervised, failing to address citizen complaints concerning police officers, and ignoring court orders. To adequately allege a *Monell* policy or practice claim, Alexenko must "plead[ ] factual content that allows the Court to draw the reasonable inference that the [City] maintained a policy, custom, or practice" that contributed to the alleged violation. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citation omitted) (internal quotation marks omitted). Alexenko's problem, however, is that he has not alleged an underlying constitutional violation. As the Court already found, the refusal to enforce the

emergency order of protection does not amount to a deprivation of Alexenko's right to familial relations, regardless of whether the City maintained any policy or practice of allowing its officers to act unsupervised, failing to address citizen complaints, or allowing those officers to ignore court orders. *See Castle Rock*, 545 U.S. at 768. Additionally, the fact that the City terminated Hoffman because of his actions with respect to Alexenko's case suggests that the City did not tolerate Hoffman's behavior. Therefore, the Court dismisses the *Monell* claim as it relates to the right to familial relations.

As for the substantive due process violation with respect to Alexenko's personal property, Alexenko has not included any allegations from which the Court could infer that the City had a policy or practice of depriving individuals of their personal property. The Seventh Circuit has recently reminded courts not to apply a "heightened pleading standard" to *Monell* claims, allowing a plaintiff to rely solely on his own experience, rather than being required to plead examples of other individuals' experiences. *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016) (quoting *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993)) (noting that plaintiff "was not required to identify every other or even one other individual who had been arrested pursuant to a warrant obtained through the complained-of process"); *Williams v. City of Chicago*, No. 16-cv-8271, 2017 WL 3169065, at *8–9 (N.D. Ill. July 26, 2017) ("Post-White courts analyzing *Monell* claims . . . have 'scotched motions to dismiss' premised on arguments that the complaint does not contain allegations beyond those relating to the plaintiff." (collecting cases)). But Alexenko must still provide some facts to support his claim that the City has a policy or practice of allowing officers to take individuals' personal property without cause, which Alexenko has failed to do. *See Harris v. Wexford Health Sources, Inc.*, No. 15-cv-10936, 2017 WL 4467480,

at *3–4 (N.D. Ill. Oct. 6, 2017) (dismissing *Monell* claim against Wexford Health Sources where complaint did not adequately provide facts to support how plaintiff's injuries were caused by Wexford's alleged policies or practices). Here, the only plausible reading of the allegations is that Hoffman's actions in facilitating Hines' removal of property from Alexenko's residence was a random event, which would not support a *Monell* claim. Therefore, the Court dismisses Alexenko's *Monell* claim concerning the deprivation of personal property against the City. Because this is the first time the Court has considered the personal property aspect of Alexenko's substantive due process claim, the dismissal is without prejudice.

### B. Equal Protection Claim (Count VII)

In a footnote in the memorandum in support of the motion to dismiss, the City argues that Alexenko's equal protection claim fails because he attempts to hold the City liable for the actions of other Naperville police officers on the basis of *respondeat superior*. But the City raised its argument for dismissal only in a footnote, meaning the Court need not address it. *See Harmon v. Gordon*, 712 F.3d 1044, 1053 (7th Cir. 2013) ("[A] party can waive an argument by presenting it only in an undeveloped footnote."). Therefore, the Court allows Alexenko to proceed on his equal protection claim at this time, leaving the merits of Alexenko's equal protection claim for a later day.

### III. IIED Claim (Count V)

Hoffman and the City also seek dismissal of Alexenko's IIED claim, arguing that Alexenko has failed to sufficiently allege the necessary outrageous conduct or that he suffered severe emotional distress as a result. To recover for IIED, Alexenko must allege that "(1) defendants' conduct was extreme and outrageous; (2) defendants either intended to inflict severe emotional distress or knew that there was a high probability that their conduct would do so; and

12

(3) defendants' conduct actually caused severe emotional distress." *Lifton v. Bd. of Educ. of City of Chicago*, 416 F.3d 571, 579 (7th Cir. 2005) (quoting *Thomas v. Fuerst*, 803 N.E.2d 619, 625, 345 Ill. App. 3d 929, 281 Ill. Dec. 215 (2004)). To be considered extreme and outrageous, the conduct "must be so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 438 (7th Cir. 2009) (quoting *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211, 154 Ill. 2d 1, 180 Ill. Dec. 307 (1992)). Alexenko fails to respond to Hoffman and the City's arguments for dismissal, effectively conceding the claim. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."). Having been given the chance to amend to sufficiently allege the elements of an IIED claim but failing to do so, the Court dismisses Alexenko's IIED claim with prejudice.

## IV.     Indemnification (Count VI)

Finally, the City seeks dismissal of the indemnification claim against it, arguing that dismissal is proper because all of Alexenko's claims against Hoffman fail. But because the Court has found that Alexenko may proceed against Hoffman on his substantive due process claim for deprivation of the right to personal property, a basis remains for the indemnification claim against the City.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion to dismiss [43]. The Court dismisses Counts I, II, and V with prejudice and Count IV without prejudice.

Dated: March 27, 2018

SARA L. ELLIS
United States District Judge